THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **Dr. Richard C. Carrier**, | : | Case No. **2:2019-cv-02719-PHX-JJT** |
| | : | |
| Plaintiff, | : | Judge John J. Tuchi |
| | : | |
| v. | : | |
| | : | **ANSWER TO DEFENDANT'S** |
| **Amy Elizabeth Frank**, | : | **COUNTERCLAIM AND** |
| | : | **AFFIRMATIVE DEFENSES** |
| Defendant. | : | |

Richard Carrier hereby (1) answers Amy Frank's Counterclaim and (2) asserts affirmative defenses. Hereafter, each statement that something is affirmed shall mean affirmed by Richard Carrier, and each statement that something is denied shall mean denied by Richard Carrier.

**PART ONE:**
**Answer to Amy Frank's Counterclaim**

1. Answering Paragraph 1, whether Amy Frank is or is not a neurobiology student at Arizona State University is unknown to Dr. Carrier. That she published the other statements alleged in this paragraph is affirmed, but that they are true is denied, and that Dr. Carrier has said they are not true is affirmed. Additionally,

the allegations regarding Dr. Carrier's motives (that he "retaliated"  and sought to "bully" her, rather than defended himself and sought justice) are denied. Anything else alleged in this paragraph is denied.

2. Answering Paragraph 2, that Dr. Carrier has said Ms. Frank has lied about certain things is affirmed; that destroying her reputation was his intent is denied.

3. Answering Paragraph 3, that Ms. Frank has done what is there declared is affirmed.

4. Answering Paragraph 4, with respect to the requirements of jurisdiction the content of this paragraph is affirmed; insofar as anything else in it is being alleged, it is denied.

5. Answering Paragraph 5, its content is affirmed.

6. Answering Paragraph 6, its content is denied.

7. Answering Paragraph 7, its content is affirmed.

8. Answering Paragraph 8, its content is affirmed.

9. Answering Paragraph 9, its content is affirmed, insofar as Dr. Carrier admits Ms. Frank told him this, but he has no further knowledge whether it's true or false.

10. Answering Paragraph 10, its content is affirmed.

11. Answering Paragraph 11, its content is affirmed.

12. Answering Paragraph 12, its content is affirmed.

13. Answering Paragraph 13, its content is affirmed, except insofar as Dr. Carrier does not know whether it's true such events improve attendee's job opportunities and therefore can neither affirm nor deny that.

14. Answering Paragraph 14, its content is affirmed.

15. Answering Paragraph 15, its content is affirmed, except Dr. Carrier does not know what the current or subsequent policy of the SSA is or was, only what it was in early 2015 when he interacted with Ms. Frank, and makes affirmation only as to that time.

16. Answering Paragraph 16, that Dr. Carrier joined students at a bar is affirmed, except that it was not one but two bars, the first being the official SSA club afterparty, and the second a private gathering not coordinated by the SSA campus club, so if anything the contrary is here being alleged, it is denied. That joining students at a bar was against the referenced policy is denied. That Dr. Carrier made sexual advances toward any student at either bar is denied.

17. Answering Paragraph 17, its content is affirmed, except Dr. Carrier denies he was "sexually fixated" upon another woman, as to the contrary he was asked by that woman to discuss polyamory with her, their meeting specifically to do so was arranged prior to the event by a mutual acquaintance, Dr. Carrier respectfully addressed her questions in the matter throughout the night, and she accompanied him on her own initiative for over four hours, even to the second bar, and until it closed in the early morning hours (per Answer, Par. 16).

18. Answering Paragraph 18, Dr. Carrier does not know whether Ms. Frank actually thought what is alleged in this paragraph at that time, so he cannot positively affirm nor deny it, but he has substantial doubts it was then as now being described. Whatever else may be alleged in this paragraph is unclear to Dr. Carrier and therefore he can make no response to it at this time.

19. Answering Paragraph 19, Dr. Carrier does not know whether Ms. Frank actually thought what is alleged in this paragraph at that time, so he cannot positively affirm nor deny it, but he has substantial doubts it was then as now being described. Whatever else may be alleged in this paragraph is unclear to Dr. Carrier and therefore he can make no response to it at this time.

20. Answering Paragraph 20, its content is affirmed, with the understanding that this occurred after the second not the first bar (per Answer to Par. 16), and the home in question was in fact where Dr. Carrier was staying the night and it was the others, including Amy Frank, who chose to follow him there, not the other way around. Anything else alleged in this paragraph is denied.

21. Answering Paragraph 21, that a small group went to an SSA member's home is affirmed, but the rest is denied, as it was Dr. Carrier who had to retreat to that home to stay the night by previous arrangement, and it was the "small group" who chose to follow him there, not the other way around.

22. Answering Paragraph 22, that the student in question did not join the group that followed Dr. Carrier to the home he was staying at is affirmed; all other allegations in this paragraph are denied.

23. Answering Paragraph 23, Dr. Carrier affirms that he recalls being squeezed into the back seat of a ride share with several students, such that physical contact was unavoidable; he denies this contact was in any way sexual or provocative. Dr. Carrier does not know what Ms. Frank thought about any of this, so he cannot positively affirm or deny it at this time, but he has substantial doubts it was then as now being described.

24. Answering Paragraph 24, its content is affirmed.

25. Answering Paragraph 25, its content is affirmed.

26. Answering Paragraph 26, that Dr. Carrier honestly and openly answered occasional questions from the group about sex throughout the night is affirmed; everything else is denied: Dr. Carrier never addressed Ms. Frank at that location except openly in front of and as a part of the group, until the conclusion of the night (which was in the early hours of the next morning) when Ms. Frank approached Dr. Carrier herself and initiated a conversation with him about opening her relationship.

27. Answering Paragraph 27, that Dr. Carrier honestly and openly answered occasional questions from the group about his sex life is affirmed; that he was thereby "bragging" (rather than simply answering the questions posed him) is denied. Anything else alleged in this paragraph is denied.

28. Answering Paragraph 28, that Dr. Carrier said this one time, out loud, to the whole group and not directed at Ms. Frank, in response to their specific question about the matter, is affirmed; anything else being here alleged is denied.

5

29. Answering Paragraph 29, Dr. Carrier has no recollection of this and therefore cannot affirm or deny it.

30. Answering Paragraph 30, this paragraph is confusingly and mysteriously worded to the extent that Dr. Carrier is unsure what it is alleging and therefore can make no response on the matter, except that he affirms another student extensively touched Ms. Frank in a very intimate manner, and Dr. Carrier even openly commented on this fact, which was observed by others present.

31. Answering Paragraph 31, Dr. Carrier has no knowledge as to the truth or falsity of this statement and therefore can neither affirm nor deny it.

32. Answering Paragraph 32, its content is affirmed.

33. Answering Paragraph 33, its content is denied. It is affirmed only that Dr. Carrier only said this openly in front of everyone, as a sworn witness has already testified by affidavit.

34. Answering Paragraph 34, its content is denied, insofar as it only refers to "repeatedly whispered" statements; as witnesses will attest, Dr. Carrier was never alone with or in proximity to whisper anything, much less that, to Ms. Frank, until one time at the end of the night when Ms. Frank approached Dr. Carrier on her own initiative to discuss an open relationship, and the conversation that ensued was quiet but not whispered. Dr. Carrier does not recall discussing sex with her, so he can neither affirm nor deny whether any conversation on that subject occurred, but he does recall, and thus affirms, telling

her his potential future romantic interest in her, contingent on her future relationship status allowing it. Anything else alleged in this paragraph is denied.

35. Answering Paragraph 35, its content is denied.

36. Answering Paragraph 36, Dr. Carrier has no recollection of such a conversation and therefore cannot affirm or deny what is here described, only that insofar as this paragraph is alleging the same specific statements Ms. Frank elsewhere published (Counterclaim, Exhibit 4, and Complaint, Exhibit 2), then it is denied, as Dr. Carrier would never have said he was "disappointed" by an offer of the kind of sexual encounter described, as it has always been one of his favorite activities, which leads Dr. Carrier to suspect Ms. Frank has fabricated this conversation, since to suit her very purpose of painting him a lecher Dr. Carrier believes she would surely have reported his *actual* preferences had they really discussed them, as being supposedly even more scandalous.

37. Answering Paragraph 37, Dr. Carrier has no recollection of such a conversation and therefore cannot affirm or deny what is here described, except insofar as it is alleging any of the same things alleged in Pars. 33 through 36, in which case the same responses there hold here.

38. Answering Paragraph 38, its content is denied, except with respect to Ms. Frank telling Dr. Carrier her husband was jealous and controlling and would monitor her email, which is affirmed, as she expressed this as a problem to be solved in order that she could discuss open relationships further after Dr. Carrier's departure and even pursue open relationships in future, which fact she

corroborated in a subsequent Facebook message to Dr. Carrier (per Answer, Par. 47, below).

39. Answering Paragraph 39, its content is denied.

40. Answering Paragraph 40, that Dr. Carrier complimented Amy Frank's appearance and said that he wanted to keep in touch and send her something "inappropriate" (jokingly meaning flirtatious) is affirmed; that any of this was actually inappropriate depends on the definition of the word intended, which has not here been stated, so Dr. Carrier can neither affirm nor deny that assessment owing to vagueness.

41. Answering Paragraph 41, its content is denied; Ms. Frank did express concern about the security of her communications (per Answer, Par. 38, which answer likewise applies here) but eventually suggested Facebook messaging the safest means of reaching her, as she affirmed by implication in a subsequent Facebook message she sent to Dr. Carrier (per Answer, Par. 47, below).

42. Answering Paragraph 42, response is the same as for Par. 41.

43. Answering Paragraph 43, Dr. Carrier does not recall this interaction, so he cannot positively affirm or deny it, but he deems it very unlikely, as he has always been particularly paranoid about touching people's tattoos without their permission, and doing so sounds to him like a cliche that Ms. Frank is now falsely attributing to him.

44. Answering Paragraph 44, its content is denied.

45. Answering Paragraph 45, its content is affirmed.

46. Answering Paragraph 46, as its content is contradicted by Ms. Frank's subsequent Facebook message to Dr. Carrier (per Answer, Par. 47, below), it is here denied.

47. Answering Paragraph 47, its content is denied in part and affirmed in part. That Dr. Carrier subsequently sent Ms. Frank a Facebook message, with the content as described, is affirmed. That this was against Ms. Frank's request is denied. That she at the time deemed it inappropriate is denied. That Dr. Carrier did not recall this messaging at the time of his sworn affidavit is affirmed. If this paragraph is alleging anything else, Dr. Carrier cannot discern it, and therefore can neither affirm nor deny it at this time.

48. Answering Paragraph 48, it is affirmed that Ms. Frank politely responded to the indicated Facebook message; all other allegations in the paragraph are denied, as hours later and unprompted Ms. Frank sent a *second* Facebook message expressing her enthusiasm for the possibility of starting an open relationship with Dr. Carrier, thus refuting her allegation that she "did not contact Dr. Carrier again" and refuting many of her other allegations, including but not limited to that she only responded with a polite message "to avoid conflict,"  that she deemed his advances unwelcome or inappropriate, and that she had told him not to message her about these matters.

49. Answering Paragraph 49, its content can be neither affirmed nor denied at this time, as it is unknown to Dr. Carrier whether Ms. Frank was actually approached with said query by said officer or to the contrary approached said

officer herself with said complaint. Dr. Carrier expects the truth of this matter will be resolved upon discovery and depositions of the persons involved.

50. Answering Paragraph 50, Dr. Carrier has no knowledge as to the truth or falsity of what is here stated and therefore can neither affirm nor deny it.

51. Answering Paragraph 51, its content is affirmed.

52. Answering Paragraph 52, its content is affirmed with respect to what the SSA officer in question said, but denied with respect to any further allegations that may be intended (such as whether what he said was true or came from anyone else but Ms. Frank).

53. Answering Paragraph 53, its content is denied.

54. Answering Paragraph 54, its content is affirmed, except that it is denied Dr. Carrier "made a sexual advance" on someone "at a different SSA event" or that this occurred at a conference. Dr. Carrier had incorrectly remembered and thus once incorrectly published the statement (since publicly corrected) that, when he asked another woman out at a pub, that it was after an SSA event; in fact it was an event not affiliated with the SSA, so SSA policy did not apply;  the event also was not a conference; moreover, Dr. Carrier had only said to this other woman at a pub that he'd "like to ask her out."

55. Answering Paragraph 55, its content is affirmed; except insofar as this paragraph may be alleging that the SSA banned Dr. Carrier from speaking, which is denied, as in fact Dr. Carrier was expressly told by the SSA via email that this was not a consequence of such resignation, that he was welcome to continue

scheduling speaking engagements with SSA affiliates, and by leaving the special endorsement package Dr. Carrier was no longer subject to the referenced policy at any SSA events he subsequently spoke at or attended (as it only applied to those with a Speaker's Bureau endorsement).

56. Answering Paragraph 56, its content is affirmed, with the qualification that his liberty from that policy was also sought for the purpose of allowing students to make sexual or romantic advances toward Dr. Carrier, and so that Dr. Carrier could speak at and attend events where he was already in a prior sexual or romantic relationship with students. If this paragraph is alleging anything else, Dr. Carrier cannot discern it, and therefore can neither affirm nor deny it.

57. Answering Paragraph 57, its content is denied, insofar as it is stating conclusions that are false: the "different student" was not affiliated with the SSA and did not complain of Dr. Carrier's behavior toward her, and sexual and romantic relationships between consenting adults is not in itself inappropriate. If this paragraph is alleging anything else, Dr. Carrier cannot discern it, and therefore can neither affirm nor deny it.

58. Answering Paragraph 58, insofar as this paragraph may be alleging that Ms. Frank publicly stated that she complained "through" another party, it is denied; the rest of the paragraph is affirmed.

59. Answering Paragraph 59, its content is affirmed.

60. Answering Paragraph 60, Dr. Carrier affirms he stated Ms. Frank was not telling the truth about several things; that he did so falsely, or with knowledge of falsehood or reckless disregard for truth or falsity, is denied.

61. Answering Paragraph 61, it is unclear to Dr. Carrier what in this paragraph "campaign" means or which "powerful people" are meant, so with respect to those statements this paragraph's content can neither be affirmed nor denied; with respect to Dr. Carrier having "a substantial online presence" and defending himself against Ms. Frank's false allegations via "his various online platforms," it is affirmed. Anything else this paragraph may be alleging is denied.

62. Answering Paragraph 62, insofar as this paragraph may be alleging Ms. Frank's publications did not reach a substantial audience with her statements and could not do so again, it is denied; insofar as this paragraph may be alleging Ms. Frank is not as famous a person as Dr. Carrier, it is affirmed. Anything else this paragraph may be alleging is denied.

63. Answering Paragraph 63, its content is denied; except with respect to whether Ms. Frank lost any friends over falsely accusing Dr. Carrier, which is outside Dr. Carrier's current knowledge and therefore can neither be affirmed nor denied.

64. Answering Paragraph 64, its content is outside Dr. Carrier's current knowledge and therefore can neither be affirmed nor denied.

65. Answering Paragraph 64, its content is outside Dr. Carrier's current knowledge and therefore can neither be affirmed nor denied.

66. Answering Paragraph 66, its content is denied, being implausible on its face, and still not evidenced by any materials provided by Ms. Frank.

67. Answering Paragraph 67, its content is affirmed, except with respect to the allegation that anything Dr. Carrier published is "false and defamatory," which is denied.

68. Answering Paragraph 68, its content is affirmed.

69. Answering Paragraph 69, its content is affirmed.

70. Answering Paragraph 70, its content is affirmed.

71. Answering Paragraph 71, its content is denied.

72. Answering Paragraph 72, it is affirmed that the quoted statements were published by Dr. Carrier in June of 2018 as the Counterclaim asserts; it is denied that any of them are false or defamatory.

73. Answering Paragraph 73, it is affirmed only that some of the quoted statements might be statements of fact, but it is denied that they all are, as some are statements of conclusory opinion; and it is denied that Dr. Carrier ever said Ms. Frank "made everything up," as in fact he only said she made some things up, and it is only those things in particular that Dr. Carrier has stated are false (e.g. Complaint, Pars. 22 and 29).

74. Answering Paragraph 74, its content is denied.

75. Answering Paragraph 75, its content is affirmed, except the declaration that the statements are "actionable" or "defamatory," which is denied.

76. Answering Paragraph 76, it is affirmed only that some of the quoted statements would be taken by a reasonable reader as statements of fact about Amy Frank, while others would be taken by a reasonable reader only as statements of fact about the beliefs and opinions of Richard Carrier. It is therefore denied that *none* of the statements in question would be taken by a reasonable reader as *instead* statements of fact about the beliefs and opinions of Richard Carrier or as *instead* opinions about or conclusions of argument from uncontested or privileged evidence.

77. Answering Paragraph 77, its content is affirmed, except insofar as it may be alleging Ms. Frank was *actually* sexually harassed by Dr. Carrier, which is denied.

78. Answering Paragraph 78, its content is denied.

79. Answering Paragraph 79, its content is denied.

80. Answering Paragraph 80, its content is affirmed insofar as it merely states what Amy Frank is now claiming to be the case; whether any of it is true is unknown to Dr. Carrier and can therefore be neither affirmed nor denied; except for Ms. Frank's claims of injury to her job prospects, which is denied. Any other allegations this paragraph may contain are denied.

81. Answering Paragraph 81, Dr. Carrier does not know how Ms. Frank feels about the outcome of events so he can neither affirm nor deny such statements on present knowledge, but insofar as this paragraph alleges those feelings ensue

from her being falsely accused of dishonesty by Dr. Carrier, it is denied. Any other allegations this paragraph may contain are denied.

82. Answering Paragraph 82, its content is affirmed.

83. Answering Paragraph 83, its content is denied.

84. Answering Paragraph 83, its content is denied.

85. Answering Paragraph 85, its content is denied.

86. Answering Paragraph 86, its content is denied.

87. Answering Paragraph 87, its content is denied.

88. Answering Paragraph 88, Dr. Carrier reasserts his responses to the prior paragraphs as if set forth fully herein.

89. Answering Paragraph 89, its content is denied.

90. Answering Paragraph 90, its content is denied.

91. Answering Paragraph 91, its content is denied.

92. Answering Paragraph 92, its content is denied, except with respect to impeaching Ms. Frank's honesty, which Dr. Carrier affirms as his intent in publishing and calling attention to evidence of Ms. Frank's dishonesty.

93. Answering Paragraph 93, its content is denied.

94. Answering Paragraph 94, its content is denied.

95. Answering Paragraph 95, its content is denied.

96. Answering Paragraph 96, insofar as this paragraph alleges that Dr. Carrier's statements were defamatory and/or that their falsity caused the effects Ms. Frank alleges, it is denied. Insofar as this paragraph alleges certain

consequences have befallen her as a consequence of her publishing her false accusations against Dr. Carrier, Dr. Carrier does not have sufficient knowledge with which to affirm or deny it. Any other allegations this paragraph may contain are denied.

97. Answering Paragraph 97, its content is denied.

98. Answering Paragraph 98, its content is denied, except with respect to whether Ms. Frank's behavior has affected her personal relationships, which Dr. Carrier does not have sufficient knowledge to affirm or deny.

99. Answering Paragraph 99, Dr. Carrier reasserts his responses to the prior paragraphs as if set forth fully herein.

100. Answering Paragraph 100, its content is denied.

101. Answering Paragraph 101, its content is affirmed.

102. Answering Paragraph 102, its content is denied.

103. Answering Paragraph 103, its content is denied.

104. Answering Paragraph 104, its content is denied.

105. Answering Paragraph 105, its content is denied.

106. Answering Paragraph 106, its content is denied.

107. Answering Paragraph 107, its content is denied.

108. Answering Paragraph 108, its content is denied.

109. Answering Paragraph 109, its content is denied.

110. Answering Paragraph 110, its content is denied.

111. Answering Paragraph 111, its content is denied.

112. Answering Paragraph 112, its content is denied.

113. Answering Paragraph 113, its content is denied.

The remainder of Amy Frank's Counterclaim consists not of statements of fact to be affirmed or denied but requests of the court, which Dr. Carrier fully denies are with merit.

Wherefore, Plaintiff denies that Defendant is entitled to any of the relief requested and respectfully requests that the Court dismiss the Complaint in its entirety and enter a judgment in his favor and against Defendant.

## PART TWO:
## Affirmative Defenses

Dr. Carrier's affirmative defenses set forth herein are based solely upon Amy Frank's allegations in the Counterclaim which do not describe the events and claims therein with sufficient particularity to enable Dr. Carrier to determine all of the defenses that might exist to his claims. Thus, Dr. Carrier reserves the right to assert and rely upon additional defenses that become available or apparent during the pendency of this action and to modify the affirmative defenses herein as additional information is obtained.

## FIRST AFFIRMATIVE DEFENSE
## Truth or Substantial Truth

1. Any statements made by Dr. Carrier complained of by Ms. Frank are either true or if not literally true are substantially true, in that the "gist" or "sting" of the statements is true.

2. For example, the specific allegations Ms. Frank has made that Dr. Carrier has declared false are in fact false and therefore his declarations are true; and that certain evidence could be taken by a reasonable person to be indicative of Frank's probable dishonesty is likewise true or substantially true; and that statements expressed as reasonable inferences from uncontested evidence are substantially true insofar as they are, in fact, reasonable inferences from uncontested evidence, even if they should turn out to be false in a manner unknown and unknowable to Dr. Carrier.

3. As substantial truth is a defense to claims for defamation, Dr. Carrier cannot be liable for Amy Frank's Counterclaim.

## SECOND AFFIRMATIVE DEFENSE
## Opinion or Rhetorical Hyperbole

1. Many of the statements at issue in the Counterclaim are either statements of opinion based on disclosed facts, or statements of rhetorical hyperbole that no reasonable reader is likely to interpret as a literal statement of fact.

2. For example, Dr. Carrier's arguments that Amy Frank is a dishonest person are presented as conclusions reached from public evidence that Frank does not even assert false or defamatory and that she herself published or submitted through counsel to a court of law. These statements therefore express Dr. Carrier's opinion regarding what that uncontested (and sometimes even privileged) evidence indicates or supports, and are expressly presented as such to the public.

3. Statements of opinion and statements of rhetorical hyperbole cannot form the basis of defamation claims, and so Dr. Carrier cannot be liable for Ms. Frank's Counterclaim.


### THIRD AFFIRMATIVE DEFENSE
### Lack of Actual Malice

1. Based on the facts presented in Dr. Carrier's Complaint and Ms. Frank's Counterclaim, Amy Frank is a limited-purpose public figure regarding her Counterclaim, and to prevail must therefore prove not only falsity but "actual malice."

2. Ms. Frank initiated all the precipitating events resulting in this case by publishing her allegations against Richard Carrier online with the stated intent to gain public attention and influence ("Counterclaim," Exhibit 6; likewise Exhibit 3, which solicits the public for money, and is more fully reproduced in Complaint, Exhibit 2), and she did not do this by any means to which privilege attaches (e.g.

she did not initiate these claims in a court of law or public hearing). And her efforts became almost immediately a matter of widespread public discussion (*Carrier v. Freethought Blogs et al.*, U.S. District Court, Southern District of Ohio, Eastern Div. 2:16-cv-00906, Dkt. 1, "Complaint," Pars. 37-38, 46). Dr. Carrier has only responded to this public activism in his defense.

3. Dr. Carrier did not make any statements at issue with any degree of fault, much less the actual malice required for a plaintiff to prevail on their defamation claim.

## FOURTH AFFIRMATIVE DEFENSE
### Lack of Damages

1. To prevail on a claim for defamation, a plaintiff must be able to show damages.

2. Amy Frank cannot show any of her alleged misfortunes, real or fabricated, are connected with Richard Carrier's statements regarding her.

3. It is likewise improbable that they would be, as to the contrary Amy Frank has received substantial public monetary support and sympathy in this matter, which is in the age of #MeToo the usual public response to persons taking her position whether such position is honest or not, and Frank cannot show that anyone who felt or expressed the contrary has any control over the damages she alleges and thus they cannot have produced or contributed to them.

4. Consequently Amy Frank's Counterclaim is barred because she has suffered no injury or damage as a proximate result of the claims in it.

Accordingly, Richard Carrier demands a jury trial on all issues to which the right to jury attaches in both his Complaint and Amy Frank's Counterclaim.

DATED this 7th day of June, 2019.

Respectfully submitted,

/s/ Richard C. Carrier

Richard C. Carrier (pro se)
134 W. Tulane Rd. Apt. B
Columbus, OH 43202-1943
(510) 932-9536
richard.carrier@icloud.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and accurate copy of the foregoing was served upon all parties via CM/ECF on June 7, 2019.

/s/ Richard C. Carrier

Richard C. Carrier (pro se)